UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CHRISTOPHER WILLIAMS,

        Petitioner,                Case Number 2:10-CV-11003
                                               Honorable Patrick J. Duggan

NICK LUDWIG,

        Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND A CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Michael Christopher William's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner is challenging his March 7, 2008 convictions in the Circuit Court for Berrien County, Michigan of armed robbery in violation of Michigan Compiled Laws § 750.529 and second-degree retail fraud in violation of Michigan Compiled Laws § 750.356(d). The trial court sentenced Petitioner as a fourth-time habitual felony offender to concurrent terms of 15-to-60 years for the armed robbery conviction and one year for the retail fraud conviction. Petitioner seeks habeas relief, claiming that: (1) his convictions for both retail fraud and armed robbery violate double jeopardy; (2) there was insufficient evidence to support the armed robbery conviction; (3) the prosecutor committed misconduct during closing argument; and (4) the trial court should have granted a mistrial when it was discovered that a juror knew one of the witnesses. For the reasons that follow, the Court

finds that Petitioner's claims lack merit. Therefore, the Court is denying Petitioner's request for habeas relief. The Court also is denying Petitioner a certificate of appealability.

## I. Factual and Procedural History

Petitioner's convictions arise from his attempt to steal clothing from a JC Penny store at the Orchard Mall in Benton Harbor, Michigan.

Barry Borst testified that he was a sales associate at the store and was working on the evening of December 16, 2007. Borst saw Petitioner in the store and recognized him because Petitioner had been in the store several times a week for the previous five weeks. Petitioner was carrying several jogging suits and told Borst he was going into a fitting room to try them on. Because Borst suspected that Petitioner had previously left the fitting room with fewer items than he went in with, he called store security to follow Petitioner.

After a couple of minutes, Petitioner came out of the fitting room and headed towards an exit. Borst saw that Petitioner had several items in his arms, but he could not determine whether they were all of the items Petitioner had carried into the fitting room. Borst checked the fitting room and saw a single hanger inside which was not there before Petitioner entered the room.

Karen Singleton testified that she was employed at the store as a loss prevention officer. On the evening in question, Borst contacted Singleton about Petitioner. When Singleton saw Petitioner walking toward the exit, she radioed for assistance. Singleton

followed Petitioner outside, approached him along with another security officer, Joseph Kienzle, and identified herself.  Singleton grabbed Petitioner by the arm and asked him to come back into the store, but he replied that he was not going anywhere.  Petitioner then reached towards his right side pocket and told Singleton that if she did not let go of him he would shoot her.  Petitioner told Singleton and Kienzle that he had a gun.  Both security guards backed away.  Petitioner ran, and Singleton followed on foot while Kienzle followed in a security van.

Kienzle testified that he pulled up next to Petitioner and Singleton outside the mall in a security van.  When Petitioner started to walk away, he and Singleton grabbed his arms.  Petitioner told them that if they did not let him go that he would shoot them, so they released him.

Officer Koza of the Benton Harbor Police Department also testified at Petitioner's trial.  Koza provided that he arrived at the scene in his vehicle and that as he approached from about 100 to 200 feet away, he could see Kienzle and Singleton with the suspect who broke away from them.  Koza followed the path taken by the suspect with his tracking dog.  Koza testified that he saw fresh footprints and his dog followed them between two houses.  Koza saw a jacket lying in the snow that looked like the one worn by the suspect.  He then spotted Petitioner standing on a porch.  A large dog in the window of the home was barking at Petitioner.  Koza drew his weapon and ordered Petitioner to the ground.  Koza searched the area and recovered the jacket, a sweatshirt, and jeans from the area.  The items had JC Penny tags on them.

Koza testified that he found Petitioner's birth certificate, Michigan identification card, and social security card inside the recovered jacket. Petitioner did not have a weapon. In route to the police station, Petitioner admitted to the offense and apologized.

Blake Dilley of the Michigan State Police Department testified that he responded to a call to assist Benton Township Police regarding an incident at JC Penny's involving a man fleeing the store who possessed a firearm. Dilley caught up with Koza, who was tracking the suspect with a dog. Dilley handcuffed Petitioner after Koza ordered him to the ground on a porch. No weapons were found on Petitioner. Dilley then followed some tracks and found a camouflage coat and a shirt with JC Penny's tags. Dilley gave both of these items to Koza.

Prior to the start of Petitioner's trial, a juror informed the trial court judge that she knew Kienzle. The juror admitted that she had met Kienzle in a bar and had drinks with him a couple of times. She also knew Kienzle's brother, Ron, who was a friend of her husband's. The juror stated, however, that it would not affect her ability to sit as a fair and impartial juror. Petitioner requested that the trial court remove the juror, but the trial court denied the request.

The defense did not present any evidence. After closing arguments, the trial court instructed the jury on the applicable law. The jury later returned verdicts of guilty as to both counts, and Petitioner was sentenced as indicated above.

Petitioner filed an appeal of right. His appellate brief raised the same four issues that he raises in the instant petition. The Michigan Court of Appeals affirmed in an

unpublished opinion. *People v. Williams*, No. 285025, 2009 WL 2952566 (Mich. Ct. App. Sept. 15, 2009) (unpublished opinion). In a standard order, the Michigan Supreme Court denied Petitioner's subsequently filed application for leave to appeal. *People v. Williams*, 485 Mich. 1012, 775 N.W.2d 770 (2009). Petitioner filed his current application for habeas relief on March 12, 2010.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 364-65, 120 S. Ct. 1495, 1498 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's

case." *Id*. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411, 120 S. Ct. at 1522.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, – U.S. – , 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, – U.S. – , 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id*. "[I]f this standard is difficult to meet, that is

because it was meant to be." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III.  Analysis

#### A.  Double Jeopardy

Petitioner first contends that his sentences for second-degree retail fraud and armed robbery violate the Double Jeopardy Clause of the Fifth Amendment. The Michigan Court of Appeals adjudicated this claim in his appeal of right and found that it lacked merit.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "No person shall . . . be subject for the same offence to be twice

put in jeopardy of life or limb . . . .." U.S. Const. amend. V. The Clause protects a criminal defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969)).

Whether two criminal statutes constitute the "same offense" for double jeopardy purposes depends on whether the legislature intended to allow for multiple punishments for an act that violates both statutory provisions. As the Sixth Circuit has summarized Supreme Court precedent on this issue:

> Whether punishments are "multiple" under the double jeopardy clause is essentially a question of legislative intent. [*Ohio v. Johnson*, 467 U.S. 493, 499 (1983)]; *Missouri v. Hunter*, 459 U.S. 359, 366-68 (1983).
>
> When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes. *See Missouri v. Hunter*, 459 U.S. at 368; *O'Brien v. Skinner*, 414 U.S. 524, 531 (1974). Under the double jeopardy clause, when evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent. *See Ohio v. Johnson*, 467 U.S. at 499 ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio legislature did not intend cumulative punishment for the two pairs of crimes involved here."); *Missouri v. Hunter*, 459 U.S. at 368 ("In addition, the Missouri Supreme Court has recognized that the legislature intended that punishment for violations of the statutes be cumulative. We are bound to accept the Missouri court's construction of that State's statutes."); *Brown v. Ohio*, 432 U.S. 161, 167 (1977) (Ohio Court of Appeals had "final authority to interpret that state's legislation.").
>
> Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination. . . .

-8-

*Banner v. Davis*, 886 F.2d 777, 779-80 (6th Cir. 1989).

Under *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, "[t]he test to be applied to determine whether there are two offenses or only one [and thus whether multiple punishments are permissible under the double jeopardy clause of the fifth amendment], is whether each provision requires proof of a fact which the other does not." *Id*. at 304, 52 S.Ct. at 182.  Applying this test, the Michigan Court of Appeals found that the Michigan legislature intended for multiple punishments to be imposed for a violation of both the armed robbery and retail fraud statutes:

> To convict a person of second-degree retail fraud, the prosecution must establish 1) the defendant took property offered for sale at a store, 2) the defendant physically moved the property, 3) the defendant intended to steal the property, 4) the defendant's actions took place inside a store or in the immediate area while the store was open to the public, and 5) the value of the property was less than $ 200.  MICH. COMP. LAWS § 750.356d(2); MICH. COMP. LAWS § 750.356d(4)(a).  To convict a person of armed robbery, the prosecution must prove: "(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon." [*People v Chambers*, 277 Mich App 1, 7 (2007)]; MICH. COMP. LAWS § 750.529; MCL 750.530(1).  A plain reading of the text of the statute reveals that to prove armed robbery, the prosecution was required to prove that defendant "used force or violence against any person who was present or assaulted or put the person in fear" and that the defendant possessed a weapon or represented he possessed a weapon.  MICH. COMP. LAWS § 750.529; MICH. COMP. LAWS § 750.530(1).  Neither of these elements are required to prove retail fraud.  Additionally, to prove retail fraud, the prosecution must demonstrate, among other elements, that defendant's actions took place inside the store and that the value of the property was less than $ 200.  MICH. COMP. LAWS

> § 750.356d(2); MICH. COMP. LAWS § 750.356d(4)(a). These elements are not required to prove armed robbery. "While there may indeed be substantial overlap between the proofs offered by the prosecution to establish the crimes, the prosecution must nevertheless prove different elements under these statutory provisions." [*People v. McGee*, 280 Mich App 680, 684-685 (2008)]. Thus, defendant's constitutional rights were not violated by his convictions for both offenses. *Id*.

*Williams*, 2009 WL 2952566, at *3.

Therefore, because the state appellate court concluded, as a matter of state law, that the Michigan legislature intended for multiple punishments to be imposed, Petitioner's double jeopardy challenge to his convictions for armed robbery and retail fraud lacks merit. This Court cannot second-guess the state court's construction of state law in this context. *See White v. Howes*, 586 F.3d 1025, 1032 (6th Cir. 2009). The two convictions therefore do not violate the Double Jeopardy Clause.

### B.  Sufficiency of the Evidence

Petitioner next asserts that insufficient evidence was presented at trial to sustain his conviction for armed robbery. Specifically, Petitioner challenges the sufficiency of the evidence offered to show that he was armed. Respondent asserts that the Michigan Court of Appeals decision rejecting this claim on the merits was not objectively unreasonable.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979) (internal citation and footnote omitted). A federal court may not reweigh the evidence or redetermine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S. Ct. 843, 851 (1983). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992)). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Id*. The Court does not need to be convinced that the petitioner is actually guilty beyond a reasonable doubt. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

The sufficiency of evidence "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n. 16, 99 S. Ct. at 2792 n.16, and through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Therefore, a court reviewing a claim of insufficient evidence on habeas review must accord "deference at two levels . . . first, to the jury's verdict as contemplated by Jackson, and, second, to the state court's consideration of the jury's verdict as dictated by AEDPA." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007) (internal citations omitted).

Armed robbery under Michigan law is a statutory offense. The applicable statute reads:

> A person who engages in conduct proscribed under section 530 [which

-11-

>defines robbery as a larceny by means of an assault upon the victim] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, *or who represents orally or otherwise that he or she is in possession of a dangerous weapon*, is guilty of a felony punishable by imprisonment for life or for any term of years.

Mich. Comp. Laws § 750.529 (emphasis added).

Under this statute, the prosecutor must prove two elements beyond a reasonable doubt: (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. *People v. Chambers*, 277 Mich. App. 1, 7, 742 N.W.2d 610, 614 (2007).

The Michigan Court of Appeals reasonably concluded that sufficient evidence was presented at trial to satisfy the version of the second element that requires proof beyond a reasonable doubt that Petitioner "represented orally or otherwise that he or she was in possession of a dangerous weapon." *Williams*, 2009 WL 2952566, at *1. At trial, Singleton and Kienzle both testified that they heard Petitioner say he would shoot them if they did not let him go. There also was testimony that Petitioner moved his hand towards his jacket pocket and told the two complainants that he had a gun. Viewed through the

*Jackson* standard, this evidence was sufficient to establish that Petitioner "represented orally or otherwise that he or she was in possession of a dangerous weapon." *Chambers, supra.* Accordingly, the state court's adjudication of Petitioner's sufficiency of the evidence claim was not objectively unreasonable. Petitioner has not demonstrated entitlement to habeas relief on this claim.

### C. Prosecutorial Misconduct

In his third claim, Petitioner asserts that the prosecutor committed misconduct during closing arguments. Specifically, Petitioner claims that during the rebuttal argument, the prosecutor told the jury that a shirt admitted at trial as an exhibit was the shirt recovered at the scene. Petitioner argues that this statement was not supported by the evidence.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88, 55 S. ct. 629, 633 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct 1868, 1872 (1974). It is well-settled that a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence. *Darden v. Wainwright*, 477 U.S. 168, 182, 106 S. Ct. 2464, 2472 (1986).

Here, in an attempt to undermine the prosecutor's argument that Petitioner was

found in close proximity to some of the stolen articles, the defense asserted in closing argument that Dilley could not recall if the shirt presented at trial was the one he recovered from the area of Petitioner's arrest. During rebuttal argument, the prosecutor responded by affirming that the shirt admitted at trial was indeed the one that was stolen. This argument was supported by Koza's testimony that he recalled that the shirt produced at trial was the one Dilley had recovered from the snow and handed over to Koza. Accordingly, the prosecutor did not misstate the evidence or assume facts not in evidence. A prosecutor has leeway to argue the evidence and reasonable inferences therefrom. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Because the argument was proper, Petitioner has failed to establish that the prosecutor committed misconduct. The claim does not merit habeas relief.

### D. Biased Juror

In his final claim, Petitioner asserts that the trial court was required to excuse a juror once it was discovered that she knew Kienza. The trial court allowed the juror to remain after she swore that she could be impartial despite her familiarity with the witness.

"[D]ue process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727, 112 S. Ct. 2222, 22229 (1992) (citations omitted). The Sixth Circuit has summarized a habeas court's role when reviewing a biased juror claim as follows:

> When a juror's impartiality is at issue, the relevant question is "did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). A trial court's determination of a juror's credibility is entitled to "special deference." *Id.* at 1038, 104 S.Ct. 2885; *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (noting that in determining whether a juror is biased, "deference must be paid to the trial judge who sees and hears the juror"). As previously noted, a trial court's finding that a juror was impartial is entitled to a presumption of correctness, rebuttable only upon a showing of clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Patton*, 467 U.S. at 1036, 104 S.Ct. 2885 (noting that juror impartiality is a question of historical fact). Further, the question for this Court is simply whether the state trial court's decision was "fairly supported by the record," not whether it was right or wrong in its determination of impartiality. *Witt*, 469 U.S. at 424, 105 S.Ct. 844.

*Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003)

Here, after putting the juror on the stand and allowing the parties to question her about the extent of her relationship with the witness and her ability to be impartial, the trial court made the following findings:

> Well, she obviously didn't even recognize the name when it was mentioned. So that I think adds to the facts that this relationship was so tangential that it took actually seeing him in the courtroom to refresh her memory as to who this person was. She's indicated through her testimony that she doesn't know him other than apparently being in a bar on a couple of occassions where he was present. Not– does not remember any specific conversations with him. And more cogently she indicated that she would not allow that very tangential relationship, whether with him or knowing apparently his brother, to interfere with her duties as a juror, that it would not affect her ability to judge the case in a fair and impartial manner. And in response to your questions, she said I'm going to give you a fair trial.
>
> So I– it's unfortunate but the fact of the matter is that I'm not– I believe that she's being honest in her testimony and truthful, and she– had– I think the more important thing is she brought it up herself that she knew him. Once she recognized him she felt obligated to do so.

So I– the– your request to have her dismissed is denied.

(3/7/08 Tr. at 325-326.)

This decision, which hinged on the trial court's factual determination that the juror honestly thought she could remain impartial despite her familiarity with Kienza, has not been overcome by clear and convincing evidence. The trial court's findings were based on the straight-forward testimony of the juror, and Petitioner has presented nothing to suggest that the juror was not being honest. Accordingly, there is no factual basis on which to conclude that a biased juror participated in the deliberations of Petitioner's case. The claim therefore does not warrant habeas relief.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1035 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a

threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims.

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**;

**IT IS FURTHER ORDERED**, that a certificate of appealability is **DENIED**.


DATED: August 8, 2012                    s/PATRICK J. DUGGAN
                                         UNITED STATES DISTRICT JUDGE

Copies to:

Michael Christopher Williams
#237164
Brooks Correctional Facility
2500 S. Sheridan
Muskegon Heights, MI 49444

AAG John S. Pallas